UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| SOUNDKEEPER, INC., CONNECTICUT FUND FOR THE ENVIRONMENT, INC., and CONSERVATION LAW FOUNDATION, INC.,<br><br>        Plaintiffs,<br> v.<br><br>A & B AUTO SALVAGE, INC. and A & B AUTO SCRAP METAL, LLC,<br><br>        Defendants. | 3:12-CV-00841 (CSH) |

**RULING ON DEFENDANTS' MOTION TO DISMISS**

**I.     INTRODUCTION**

Plaintiffs Soundkeeper, Inc., Connecticut Fund for the Environment, Inc., and Conservation Law Foundation, Inc. (collectively, "Plaintiffs") bring this lawsuit "under the citizen suit enforcement provisions of the Federal Water Pollution Control Act, 33 U.S.C. § 1251, *et seq.*" (hereafter "the Clean Water Act," "the Act," or "the CWA") in order to address and abate occurrences which Plaintiffs contend constitute "ongoing and continuous violations of the Act." [Doc. 1] at 1.

Plaintiffs allege that Defendant A&B Auto Salvage, Inc. and Defendant A&B Scrap Metal LLC (collectively, "Defendants") continue to "discharge polluted storm water runoff from their automobile salvage and scrap metal recycling facility located at 54 Wrobel [Place], East Hartford, CT 06108 ... into waters of the United States without authorization, in violation of Sections 301(a) and 402(p)(2)(B) of the  Act,  33 U.S.C. §§ 1311(a) and 1342(p)(2)(B), and that "Defendants have

1

failed to obtain coverage under [or to] comply with the conditions of an individual National Pollutant Discharge Elimination System ... [P]ermit or the State of Connecticut[] General Permit for the Discharge of Stormwater Associated with Industrial Activity issued by the Connecticut Department of Energy and Environmental Protection" in violation of Sections 402(p)(3)(A) and (p)(4)(A) of the Act, 33 U.S.C. §§ 1342 (p)(3)(A) and (p)(4)(A), and of 140 C.F.R. §§ 122.26(c)(1) and (e)(1). *Id.* at 1-2.

Defendants move to dismiss Plaintiffs' Complaint for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1). [Doc. 17]. Defendants contend both (1) that this "action is barred under Section 309(g), 33 U.S.C. § 1319(g) as the result of a 1982 Administrative Order rendering judgment issued by the State of Connecticut Department of Energy & Environmental Protection;" and, in addition, (2) that this action is barred by a 2010 State of Connecticut Department of Energy & Environmental Protection "agency determination [which] expressly stated that registration [for the property] under the General Permit was not required under the Clean Water Act." [Doc. 17-1] at 1-2 (emphasis omitted). Since Defendants contend that "all claims [contained within] the Complaint are dependent on the failure to register under the General Permit," Defendants contend that all such claims "fail as a matter of law and must be dismissed for lack of subject matter jurisdiction." *Id.* at 2.

This Ruling resolves that motion.

II.     **LEGAL STANDARDS**

A motion to dismiss for lack of subject matter jurisdiction is governed by Fed. R. Civ. P. 12(b)(1), under which a case is properly dismissed "when the court lacks the statutory or constitutional power to adjudicate the case." *Nowak v. Ironworkers Local 6 Pension Fund*, 81 F.3d

1182, 1187 (2d Cir. 1996). Both the moving and non-moving parties "may use affidavits and other materials beyond the pleadings themselves in support or in opposition to a challenge to subject matter jurisdiction" and the "district court also may inquire, by affidavits or otherwise, into the facts as they exist." *Tuccio Development, Inc. v. Town of Ridgefield*, No. 3:06-CV-01821, 2008 WL 749855 at *1 (D. Conn. March 19, 2008) (quoting *Matos v. United States Dept. of Housing & Urban Development*, 995 F. Supp. 48, 49 (D. Conn. 1997) and *Land v. Dollar*, 330 U.S. 731, 735 (1947)) (internal quotation marks omitted).

Parties asserting that subject matter jurisdiction exists – here, Plaintiffs – bear the burden of proving it by a preponderance of the evidence; all ambiguities and inferences will be drawn in their favor. *Aurecchione v. Schoolman Transp. System, Inc.*, 426 F.3d 635, 638 (2d Cir. 2005). The overarching function of a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) "is merely to assess the legal *feasibility* of the complaint, not to assay the weight of evidence which might be offered in support thereof" and, accordingly, the "issue on a motion to dismiss is not whether the plaintiff will prevail, but whether the plaintiff is entitled to offer evidence to support his claims." *Bici v. Napolitano*, No. 3:10-CV-01991, 2012 WL 642781 at *1 (D. Conn. Feb. 28, 2012) (emphasis added) (internal quotation marks omitted) (quoting *Mytych v. May Dept. Store Co.*, 34 F.Supp. 2d 130, 131 (D. Conn. 1999) and *United States v. Yale New Haven Hosp.*, 727 F.Supp. 784, 786 (D. Conn. 1990)).

### III.     **BACKGROUND**

Plaintiffs' Complaint avers that Defendants' businesses involve automobile salvage and scrap metal recycling, the housing of vehicles, motors, batteries, oils, automotive fluids, paints, and the maintaining of scrap piles containing asphalt, industrial scrap metal, and non-ferrous materials

3

including aluminum and steel, all to be found at their facility property located at 54 Wrobel Place, East Hartford, CT 06108. According to the Complaint, the moving, processing, and crushing of vehicles leads to the release of pollutants including paint, sediment, glass, copper, lead, zinc, nickel, cadmium, arsenic, mercury, and other metals, as well as non-metal pollutants; the Complaint also avers that machinery at the facility may also release fuel, oil, lubricants, and pH-affecting substances, which, according to Plaintiffs, are then carried via stormwater under fences and into ditches, streams, and, ultimately, the Hockanum River.

Defendants have attached to their Motion to Dismiss the July 9, 2010 Department of Energy and Environmental Protection[1] (hereafter "DEEP") Inspection Report on which they partially rely in their contention that Plaintiffs' Complaint ought to be dismissed in its entirety. *See* [Doc. 17-1] at 22. This July 9, 2010 DEEP Inspection Report concluded, subsequent to an examination of the property, that Defendants did not need to register for a stormwater General Permit.

Plaintiffs, opposing Defendants' motion to dismiss, point to a subsequent DEEP Memorandum which is dated April 25, 2012 and which notes that "a stormwater swale along the west side of the property ... *may* constitute a point source discharge associated with industrial activity ... [and] appears to *potentially* receive stormwater from scrap areas." [Doc. 1-2] at 2 (emphasis added). The April 25, 2012 Memorandum further notes:

> It appears that A & B Auto has a stormwater point source discharge associated with industrial activity from their property, which would require registration for the Stormwater General Permit. A & B Auto should engage a professional engineer and/or a Certified Hazardous Materials Manager to evaluate the site as soon as possible, but also during wet

---

[1] The Court notes that this Inspection Report was issued by the "Department of Environmental Protection," which is now called the "Department of Energy & Environmental Protection." For consistency and clarity, the Court will refer to this Department as the Department of Energy & Environmental Protection, or "DEEP," throughout this Ruling.

weather to determine the manner of runoff from the site.

*Id.* at 1.

Defendants apparently received a letter from DEEP concerning the conclusions and observations contained within the April 25, 2012 DEEP Memorandum and, as suggested therein, Defendants hired an engineering firm to provide an evaluation of their property. Defendants have submitted this engineering firm's resulting report as an attachment to their Supplemental Memorandum in Support of their Motion to Dismiss. *See* [Doc. 28] at 5. This engineering firm report, dated November 12, 2012, noted that while the engineering firm, in a July 24, 2012 inspection of the property, "did identify a drainage swale running along the western boundary of the property," it found "no indication of any drainage to the swale from the areas of the property where industrial activity occurs," and furthermore over the course of four inspections the engineering firm found "no indications of channelized runoff from the operational areas of the property." *Id.* at 5-6. "Based on this information and the recently conducted site inspections," the engineering firm expressed its belief "that the 54 Wrobel place property owned by A & B Auto Salvage [did] not require a stormwater permit at [that] time." *Id.* at 7.

Defendants have also provided the Court with an October 26, 2012 DEEP Memorandum which noted that DEEP staff, in a Department site visit conducted in response to a request for the same from the engineering firm Defendants had employed, "did not observe evidence of a point source discharge from the A & B site located at 54 Wrobel Place in East Hartford as defined by the Industrial Stormwater GP ... [rather, Department] staff recommended that A & B modify some areas on site in order to improve the site's topography relative to stormwater flow and reduce the chances

of channelized discharge." *Id*. at 14.² The October 26, 2012 DEEP report further stated that the engineering firm hired by Defendants "had evaluated the site during wet weather and determined there were no point source discharges," and noted that the engineering firm would "provide a report to the Department indicating such, and provide evidence that site modifications were completed as discussed." *Id.*

On April 6, 2012, prior to the April 25, 2012 Memorandum discussed *supra,* Plaintiffs served Defendants with a "Notice of Violation and Intent to File Suit under the Clean Water Act" as set forth at 40 C.F.R. Part 135. Plaintiffs filed this action's lawsuit on June 6, 2012.

## IV.   DISCUSSION

"The Clean Water Act ... is a cornerstone of the federal effort to protect the environment," and "is the principal legislative source of the EPA's authority – and responsibility – to abate and control water pollution." *Waterkeeper Alliance, Inc. V. U.S. E.P.A.*, 399 F.3d 486, 490 (2d Cir. 2005) (citations omitted). The stated objective of the Act is "to restore and maintain the chemical, physical, and biological integrity of the Nation's waters." 33 U.S.C. § 1251(a). As the United States Supreme Court recently noted, "[a] central provision of the Act is its requirement that individuals, corporations, and governments secure National Pollutant Discharge Elimination System ... [P]ermits before discharging pollution from any point source into the navigable waters of the United States."

---

² In response to the request that Defendants modify the site's topography in order to reduce the chance of channelized discharge, Defendants created a small berm along the western and northern boundaries of the property and the customer parking lot was regraded. [Doc. 28] at 7. The engineering firm hired by Defendants acknowledged that these modifications had left "a drainage swale along the western boundary of the property, but" has specified that "the stormwater that this channel receives is from the road and only passes through the very southwestern corner of the property," and that, in addition, "there is no industrial activity in this area of the property." *Id.*

*Decker v. Northwest Environmental Defense Center*, _ U.S. _, 133 S. Ct. 1326, 1331 (2013). To that end, Section 301(a) of the CWA prohibits anyone from discharging any pollutant, "[e]xcept as in compliance with" particular sections of the Act, including 33 U.S.C. § 1342. *See* 33 U.S.C. § 1311(a), discussed *infra*. Outside of these allowances, "the discharge of any pollutant by any person shall be unlawful." *Id.*

Plaintiffs contend that their standing to bring this lawsuit is found within Section 505 of the CWA, which explicitly authorizes citizen suits brought pursuant to the Act. As the Second Circuit has noted, "Congress expressly provided in [the] CWA that its provisions might be enforced through a citizen enforcement suit." *No Spray Coalition, Inc. v. City of New York*, 351 F.3d 602, 605 (2d Cir. 2003) (comparing this aspect of the CWA to the Federal Insecticide, Fungicide, and Rodenticide Act, 7 U.S.C. § 136 *et seq*.) Section 505 of the CWA provides in relevant part that "any citizen may commence a civil action on his own behalf" against any person "who is alleged to be in violation" either "of an effluent standard or limitation under this chapter" or "of an order issued by the Administrator or a State with respect to such a standard or limitation." 33 U.S.C. § 1365(a)(1). An "effluent standard or limitation" for purposes of Section 505 is defined as:

> ...(1) *an unlawful act under subsection (a) of section 1311* [i.e., § 301(a)] of this title; (2) an effluent limitation or other limitation under section 1311 or 1312 of this title; (3) standard of performance under section 1316 of this title; (4) prohibition, effluent standard or pretreatment standards under section 1317 of this title; (5) certification under section 1341 of this title; (6) *a permit or condition thereof issued under section 1342 of this title* ...; or (7) a regulation under section 1345(d) of this title."

33 U.S.C. § 1365(f) (emphasis added); *see also, e.g., Connecticut Fund for the Environment v. Contract Plating Co., Inc*. 631 F.Supp. 1291, 1292 (D.Conn. 1986). In other words, the term "effluent standard" as defined by Section 505 encompasses any violation of the strict prohibition

7

contained in Section 301 of the CWA – discussed *infra* – on discharges without an appropriate permit. The term "effluent standard" for purposes of Section 505 also specifically encompasses allegations of the discharge of pollutants without a Section 402 permit (also discussed *infra*).

Defendants aver that notwithstanding the allegations in Plaintiffs' Complaint, "registration with the DEEP seeking General Permit coverage as well as compliance with the requirements of this General Permit coverage was *not* required" at any point relevant to this lawsuit because the aforementioned "July 9, 2010 DEEP Inspection Report [itself] expressly stat[ed] that registration was *not* required." [Doc. 17-1] at 5 (emphasis in original). Accordingly, Defendants contend that Plaintiffs have no standing to bring a CWA citizen suit pursuant to Section 505. As a corollary, Defendants also argue that because DEEP had in 2010 indicated its belief that a General Permit was not needed in the relevant time frame, Plaintiffs, in bringing the Complaint in the action at bar, failed to comply with the notice requirements set forth in Section 505, which dictate in part that when a citizen seeks to initiate a new action under this section, an action may not be brought "prior to sixty days after the [citizen] plaintiff has given notice of the alleged violation (i) to the Administrator; (ii) to the state in which the alleged violation occurs; and (iii) to any alleged violator of the standard, limitation, or order." 33 U.S.C. § 1365 (b)(1)(A).

Defendants lastly contend that Plaintiffs' action is barred under Section 309(g) of the CWA, i.e., 33 U.S.C. § 1319(g), which "bars citizen suits when the state has commenced and is diligently pursuing a civil, criminal or enforcement proceeding against the polluter pursuant to comparable State law." [Doc. 17-1] at 16 (citing 33 U.S.C. § 1319(g)(6)(A)(ii) and *McAbee v. City of Fort Payne*, 318 F.3d 1248, 1251 (11th Cir. 2003)). Defendants aver that "[b]etween 1978 and 1982, both the DEEP .... and the Town of East Hartford ... brought enforcement proceedings against James

Morone ..., predecessor to the Defendants at the Facility" who "operated an unpermitted solid waste disposal area at the Facility." *Id.* In Defendants' words, "[o]n April 5, 1982 and again on July 22, 1982, Morone entered into stipulated judgments with both the DEEP and the Town wherein he agreed to close the site in compliance with applicable regulations." *Id*. at 16-17 (internal quotation marks omitted). Thus Defendants conclude that "this Court must dismiss this action under 33 U.S.C. § 1319 (g)(6)(1)(ii) because: (1) the state law under which the Connecticut Department of Environmental Protection ... is proceeding is comparable to 33 U.S.C. § 1319(g)[;] and (2) the [Connecticut Department of Environmental Protection] is diligently prosecuting its action." *Id.* at 17 (internal quotation marks and citation omitted).[3]

### A.     Whether Plaintiffs Lack Standing to Bring This Lawsuit

Defendants argue that Plaintiffs lack standing to bring this lawsuit as no registration violation existed at any time relevant to this lawsuit, including the date on which Plaintiffs' Complaint was file, i.e., June 6, 2012. *See* [Doc. 17-1] at 10; *see also* [Doc. 1]. As noted *supra*, in support of this argument Defendants point both to the July 9, 2010 DEEP Report, *id.* at 22, which concluded that Defendants did not at that time need to register for a stormwater General Permit, and to the April 25, 2012 DEEP Memorandum, which indicated that a request for further evaluation of the need for a permit had been made and which did not affirmatively require Defendants to apply for a General Permit. *Id.* at 10.

Plaintiffs respond to Defendants' assertions with the contention that despite these two DEEP-produced documents and the conclusions contained therein, Plaintiffs *are* allowed under Section 505

---

[3] Defendants include in their motion a demand for attorney's fees. Given the Court's resolution of the motion, attorney's fees will not be awarded to Defendant at this stage of the litigation.

of the CWA to challenge Defendants' alleged discharge of a pollutant from a point source without a General Permit because such a discharge is *in and of itself* an unlawful act pursuant to Section 302(a) of the CWA, a fact which renders any DEEP findings or statements potentially factually relevant but not dispositive. Plaintiffs note that the Act itself states that Section 505 citizen suits against those "in violation of ... an effluent standard or limitation" within its purview are permitted, *see* 33 U.S.C. § 1365(a)(1)(A), and thus conclude that, as the property in question is an auto salvage and scrap recycling operation which is allegedly discharging stormwater "associated with industrial activity" from a point source into the waters of the United States, Defendants fall squarely within Section 505 and the Act's purview regardless of any DEEP reports or statements. [Doc. 1] at ¶¶ 103-109; *see also, e.g.,* 40 C.F.R. § 122.26(c)(1); 40 C.F.R. § 122.26(b)(14).

From this record and the parties' conflicting contentions, a central question emerges: Whether Section 505 citizen suits may be brought against persons or entities that are allegedly discharging relevant pollutants without a permit *when the EPA or applicable State agency has previously determined that such a permit is not required*. Phrased differently: May a citizen suit be brought against a person or entity in order to determine whether that person or entity needs to obtain an NPDES or General Permit in order to discharge stormwater associated with an industrial activity from a point source, when the relevant regulatory body has knowingly not required such a permit? As Plaintiffs succinctly summarize this question: can a "violation of the Clean Water Act ... exist in Connecticut [before] the Connecticut Department of Energy & Environmental Protection deems that one exists," *see* [Doc. 19] at 2, or, rather, is DEEP "the gatekeeper for CWA citizen suits"? *Id.* at 8.

Plaintiffs, asserting that subject matter jurisdiction exists, are confronted by Defendants' Rule

12(b)(1) motion to dismiss, which challenges jurisdiction. Consequently, Plaintiffs bear the burden of establishing jurisdiction by a preponderance of the evidence. The Court, as it must for purposes of a motion to dismiss under Rule 12(b)(1), draws all ambiguities and inferences in favor of Plaintiffs. *Aurecchione v. Schoolman Transp. System, Inc.*, 426 F.3d at 638. As noted *supra*, the overarching function of a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) "is merely to assess the legal *feasibility* of the complaint, not to assay the weight of evidence which might be offered in support thereof" and, accordingly, the "issue on a motion to dismiss is not whether the plaintiff[s] will prevail, but whether the plaintiff[s] [are] entitled to offer evidence to support [their] claims." *Bici v. Napolitano*, 2012 WL 642781 at *1 (emphasis added) (internal quotation marks omitted) (quoting *Mytych v. May Dept. Store Co.*, 34 F.Supp. 2d at 131 and *United States v. Yale New Haven Hosp.*, 727 F.Supp. at 786).

> **1. Whether a Citizen Suit May Be Brought When the EPA or Equivalent State Agency Has Previously Stated Or Determined That a Permit Is Not Required**

With respect to the question of whether a citizen suit may be brought when the EPA or equivalent state agency, here DEEP, has previously stated or determined that a permit is not required: there is precedent within this Circuit for Section 505 citizen suits to be brought over a lack of permit for a particular activity when, as here, the EPA or an equivalent state agency has previously determined that such a permit was not required. For example, the Second Circuit's decision in *Peconic Baykeeper, Inc. v. Suffolk County*, 600 F.3d 180 (2d Cir. 2010), involved a case in which local New York State county defendants had employed various measures to combat the spread of mosquito-borne illnesses including the use of pesticides intended to kill adult mosquitos in mid-flight. The plaintiffs in that case, who like the Plaintiffs here had commenced an action under

11

Section 505's citizen suit provision, contended that the defendants had violated the Clean Water Act through particular applications of pesticides, as well as through other related activities. "In carrying out [these] mosquito-control measures, [defendants had been] under the oversight of the New York State Department of Environmental Conservation ..., an agency with EPA-delegated authority to enforce the CWA in [New York State]," which "[a]s part of its CWA enforcement powers ... issues [certain] permits ... equivalent to a [comparable] permit issued by the EPA pursuant to the CWA." *Id.* at 184. (citation omitted). The defendants in *Peconic Bay Keeper, Inc.* had, as had the Defendants in the case at bar, been informed by the relevant regulatory body that a permit was unnecessary for the very activity over which a citizen suit had been brought.

    Indeed, in *Peconic Baykeeper, Inc.*, the New York State Department of Environmental Conservation had not only "reviewed and approved maps delineating the area to be sprayed by [defendants]," but had also given defendants "guidance as to whether [they were] required to receive [such an aforementioned] permit prior to spraying," or, rather, "whether the pesticide application [in which they engaged] was exempt from the CWA's permitting requirement." *Id.* Specifically, the New York State Department of Environmental Conservation "advised [defendants] that so long as [their] spraying complied with [certain requirements], the CWA did not require issuance of [such a] permit prior to the application of pesticides." *Id.* As the Second Circuit noted, "[t]he EPA later codified the principle" articulated and relied upon by the New York State Department of Environmental Conservation in this advice in an Interim Statement and, later, in a Final Rule. *Id.* Nonetheless, the plaintiffs brought a citizen suit under the Clean Water act alleging that defendants had violated the Act in part by engaging in the *very act* which the New York State Department of Environmental Conservation *had reviewed and, moreover, had determined did not require a permit*.

12

Neither the district court's nor the Second Circuit's decision in *Peconic Baykeeper, Inc.*, turned on the contested presence of subject matter jurisdiction. *See id*; *see also, e.g., Peconic Baykeeper, Inc. v. Suffolk County*, 585 F.Supp. 2d 377 (E.D.N.Y. 2008). However, I think it fair to say that by *not* turning on a or even addressing Rule 12(b)(1) question, both decisions in *Peconic* implicitly accepted that a citizen suit may be brought over actions or circumstances which the EPA or relevant State agency has specifically determined did not require a CWA permit. "[F]ederal courts are under an independent obligation to examine their own jurisdiction," *FW/PBS Inc. v. City of Dallas*, 493 U.S. 215, 231 (1990), and "[w]hether a federal court has subject matter jurisdiction is a question that may be raised at any time ... by a court sua sponte." *McGinty v. New York*, 251 F.3d 84, 90 (2001) (quoting *Lyndonville Savings Bank and Trust Co. v. Lussier*, 211 F.3d 697, 700 (2d Cir. 2000)) (internal quotation marks omitted).

Other Circuits have more directly addressed the Section 505 standing question discussed *supra*. The Ninth Circuit, for example, has repeatedly held "that a court may, in entertaining a citizen suit, decide whether a discharge of particular matter into navigable waters violates the CWA *even though the regulating agency determined that the discharge was not subject to the requirement of a permit*." *San Francisco Baykeeper v. Cargill Salt Div.*, 481 F.3d 700, 706 (9th Cir. 2007) (emphasis added) (citing *Association to Protect Hammersley, Eld, and Totten Inlets v. Taylor Resources, Inc.*, 299 F.3d 1007, 1012-13 (9th Cir. 2002)). The Fifth Circuit has similarly stated that "a citizen may ... bring an action against a person that is [acting] without a permit *even where [the] EPA has failed to issue a permit or promulgate an effluent limitation to cover the discharge*." *Sierra Club, Lone Star Chapter v. Cedar Point Oil Co. Inc.*, 73 F.3d 546, 566 (5th Cir. 1996) (emphasis added).

For reasons similar to those expressed in these Ninth and Fifth Circuit decisions, this Court, applying the standards governing a Rule 12(b)(1) motion to dismiss, and consistent with the Second Circuit's implicit acceptance of a citizen's suit such as the one in the particular circumstances at bar, declines to dismiss Plaintiffs' Complaint on the ground that Plaintiffs lack the standing to bring it, or the Court is otherwise lacking in subject matter jurisdiction.

## 2. Defendants' Notice Arguments

As Defendants state in their pleadings, their notice arguments are entirely derivative of their argument concerning whether Plaintiffs had standing to bring this lawsuit under the existing circumstances. As such, given the Court's above reasoning and conclusions with respect to Defendants' arguments concerning preclusion of this lawsuit by the 2010 DEEP Memorandum, the Court will not dismiss this action due to an alleged deficiency in Plaintiffs' adherence of the prescribed statutory notice requirements. The Court will briefly touch upon the most prevalent of these arguments, however, in order to clarify what it construes to be a misreading of the pertinent statutory language by Defendants.

Specifically, Defendants' argument that Plaintiffs lack standing for failing to comply with applicable notice requirements appears to be that although Plaintiffs *did* give the required 60 days of notice to all appropriate parties, at the time such notice was issued – i.e., on April 6, 2012 – "registration [and a permit] under the Act was not required." [Doc. 17-1] at 13. "As such," Defendants conclude, "the notice [Plaintiffs provided] is defective and Plaintiffs lacked standing to file this lawsuit." *Id.* This reasoning and reading of the relevant section of the CWA is not sensible. 33 U.S.C. § 1365(b)(1)(A) provides that no citizen suit shall be brought under the CWA "prior to sixty days after the plaintiff has given notice of the *alleged violation*" to appropriate parties.

*Id.* (emphasis added). A complaint *alleges*, upon information and belief; a fact-finder makes determinations with respect to such allegations. Section 505 citizen suits, like all lawsuits at a notice or complaint stage, concern *alleged violations*. It is therefore entirely possible that a fact-finder ruling upon this lawsuit could determine that no CWA permit had been required under a particular set of circumstances and that, accordingly, no CWA violations had taken place, and yet also determine that the initial notice provided by Plaintiffs for this lawsuit had been entirely proper.

The Court further notes that Defendants have also averred that Plaintiffs' notice was somehow premature, and that "this case is not ripe for adjudication because DEEP is reevaluating the need for Defendants to register for a stormwater general permit." *See* [Doc. 17-1] at 15, 12-15. Defendants go so far as to state that "Plaintiffs' actions and this lawsuit are *unconscionable* ... because Defendants have not been allowed [a full] DEEP recommended evaluation and an opportunity, if necessary, to bring the Facility into compliance." *Id.* at 13 (emphasis added). Defendants also aver at page 14 of their Memorandum in Support of their Motion to Dismiss that "[t]he ripeness doctrine is intended, through avoidance of premature adjudication, to protect the courts from entangling themselves in abstract disagreements." *Id.* at 14. While that last statement is undeniably true, under Section 505, *any citizen* may commence a civil action against *any person* who is *alleged to be in violation* of an effluent standard or limitation under the CWA, and the district courts have jurisdiction over such actions. To the extent that Defendants are attempting to premise a ripeness contention on 33 U.S.C. § 1319(g)(6), addressed more fully *infra*, the Court disagrees that anything within that CWA subsection supports a ripeness or exhaustion argument. The Court will not dismiss this lawsuit on the basis that notice was improper due to any sort of lack of ripeness or exhaustion.

**B.     Whether Plaintiffs' Claim is Barred by 33 U.S.C. 1319(g)**

Section 1319(g)(6) of the CWA in relevant part precludes citizen suits which, like, the one at bar, are civil penalty actions when either the EPA or a relevant State authority "has commenced and is diligently prosecuting an action" based upon the same claims and circumstances at issue in the citizen suit. *See* 33 U.S.C. § 1319(g)(6)(A) and (g)(6)(A)(i)-(ii). It also bars citizen suits for which the EPA or relevant State authority "has issued a final order not subject to further judicial review and the violator has paid [an appropriate] penalty...." *See* 33 U.S.C. § 1319(g)(6)(A)(iii). [4]

Defendants state in support of their Motion to Dismiss:

> DEEP is well aware of the lengthy history of the facility as defined in the Complaint ... as well as the surface water requirements that it has imposed via an Administrative Order. In light of this, ... DEEP has expressly found that registration is *not* required under the General Permit. As such, all Plaintiffs' claims fail as a matter of law. Furthermore, the Facility is subject to an Administrative Order issued by ... DEEP which runs with the land and which requires continuing surface water (stormwater) compliance presently overseen by DEEP. DEEP is actively engaged in overseeing the Facility's operations and compliance [as] evidenced by the prompt inspection and April 25, 2012 Inspection Report following Plaintiffs' purported April 6, [2012] notice [of this lawsuit]. This suit, therefore, runs afoul of the 'limitation on actions' provisions contained in 33 U.S.C. § 1319(g)(6)(A) and perverts the purpose and intent behind the citizen suit provisions contained in the [CWA]. For these reasons, this suit must be dismissed as it materially interferes with DEEP oversight.

[Doc. 22] at 2-3 (citations omitted).

Even without considering the citizen suit-specific exceptions to 33 U.S.C. § 1319(g)(6)(A)

---

[4]     These provisions are in general accord with the Notice provision contained within Section 505 of the CWA, which states in relevant part that no citizen suit may be commenced "if the [EPA] or State has commenced and is diligently prosecuting a civil or criminal action in a court of the United States, or a State to require compliance with the standard, limitation, or order, but in any such action in a court of the United States any citizen may intervene as a matter of right." 33 U.S.C. § 1365(b) and (b)(1)(B).

which are contained within 33 U.S.C. § 1319(g)(6)(B),[5] it is apparent that nothing within 33 U.S.C. § 1319(g)(6)(A) precludes the citizen suit before this Court, as no action has been commenced or is currently being diligently prosecuted by a Connecticut public agency, and moreover, no relevant final order as discussed *supra* has been entered.

As an initial matter, "[i]n order to invoke section 1319(g)(6) [of the CWA] to limit a citizen's suit, it is imperative that a state [or the EPA has] commenc[ed] enforcement proceedings." *Connecticut Fund for the Environment v. Acme Electro-Plating, Inc.*, 822 F.Supp. 57, 60 (D.Conn. 1993). Such enforcement proceedings must be on-going and must be specific to the issues with which the citizen suit is concerned. A description of the sort of civil action contemplated by § 1319(g)(6)(A) may be found at § 1319(b):

> The Administrator is authorized to commence a civil action *for appropriate relief, including a permanent or temporary injunction*, for any violation which he is authorized to issue a compliance order under subsection (a) of this action. Any *action under this subsection may be brought in the district court of the United States....*

33 U.S.C. § 1319(b) (emphasis added).

Over two decades ago, for example, Judge Eginton held that a citizen suit concerning circumstances similar to those in this matter over which "the state had not commenced an enforcement proceeding" for five years, and of which the last potentially relevant enforcement proceeding had been concluded upon entry of stipulated judgment roughly four years prior, was not barred by 33 U.S.C. § 1319. *Id.* Defendants aver that "[i]n the present matter, ... DEEP has had

---

[5] These citizen suit-specific exceptions provide that the statutory limitations set forth at subsection (A) do not apply to citizen suits which were filed prior to the commencement of an EPA or State action or to citizen suits in which "an action ... with respect to [the] violation[s] [alleged in the suit] is filed before the 120th day after the date on which ... notice [of the citizen suit] is given." *See* 33 U.S.C. § 1319(g)(6)(B)(i)-(ii)

active continuing oversight over the Facility for decades, even to the extent that it has directed that surface waters be treated in a prescribed manner." [Doc. 22] at 3.

While the Court need not and will not affirmatively determine, for purposes of adjudicating this motion to dismiss, whether the DEEP visits to Defendants' property – some of which took place in response to a request from an engineering firm Defendants had hired – constitute a requisite statutory commencement or diligent prosecution of an action, it will note for purposes of a Fed. R. Civ. P. 12(b)(1) adjudication that there is nothing in the record to support the notion that these visits were either indicative of, or for that matter a product of, DEEP's having commenced and having been diligently prosecuting an action as per the relevant requirements in 33 U.S.C. § 1319(g)(6)(B). The facial language of this subsection appears to contemplate an action which has been "brought in [a] district court of the United States" for "appropriate relief" and not merely an investigation, *see* 33 U.S.C. § 1319(b); however, the Court is unconvinced by the record before it whether the DEEP documents and site visits were sufficient even to constitute what could reasonably be construed as a single investigation. Further, even were the Court to find that the Department's actions reflected the *commencement* of such an action, there is absolutely no cognizable evidence on the record that such an action was being *diligently prosecuted* by DEEP or any other regulatory authority. Pursuant to the guidelines of how it must evaluate a motion to dismiss brought under Fed. R. Civ. P. 12(b)(1), the Court cannot and will not grant Defendants' motion to dismiss on such grounds.

Furthermore: Defendants' entire argument that this matter ought to be dismissed due to its preclusion by 33 U.S.C. § 1319 appears to be premised upon the assertion that since entry of a 1982 Administrative Order "that runs with the land," DEEP has, "[a]s evidenced by [its] July 9, 2010 Inspection Report, ... been 'diligently prosecuting' its 1982 enforcement action with follow-up site

inspections that address[] both the contamination below as well as the surface waters (stormwaters) at the Facility." *Id.* at 5. "Indeed," Defendants aver, "the July 9, 2010 DEEP Inspection Report contains explicit remarks concerning 'stormwater' and how the site was graded. It also referenced the fact that the previous inspection of the Facility occurred on October 7, 2009, further evidence of the ongoing nature of the enforcement action that resulted in the 1982 Administrative Order." *Id.* Defendants further aver that Judge Eginton's 1993 decision in *Connecticut Fund for the Environment v. Acme Electro-Plating, Inc.*, discussed *supra*, is distinguishable from the circumstances at bar, as in the circumstances there present DEEP had "brought an enforcement action [years prior to the lawsuit] due to the failure of [the defendant] to apply for and obtain an effluent discharge permit. A [j]udgment entered and [defendant] applied for but was denied a permit. Despite the denial of the permit, the [DEEP] took no action," and, as a result of the DEEP not taking any subsequent action, the court held that DEEP "was not diligently prosecuting an enforcement action." *Id.* at 6.

The Court disagrees. The 1982 administrative order and accompanying stipulated judgment on which Defendants rely predates the violations alleged in Plaintiffs' notice letter and Complaint by roughly a *quarter of a century*. The 1982 administrative order and stipulated judgment also involved a different owner and a different operator of the property; different industrial activity; a different statute; and a different applicable permit program. The Court further notes that, as Plaintiffs note, the particular "EPA regulations requiring industrial facilities like [D]efendants' facility to seek permit coverage for stormwater discharges associated with industrial activity were not promulgated by the EPA until 1990, eight years after" the 1982 administrative order and judgment. *See* [Doc. 19] at 14 (citing 40 C.F.R. § 122.26 (1990) and 55 F.R. 48063 (Nov. 16, 1990)).

The pertinent language contained within § 1319(g)(6) is clear: "*any violation* ... for which the Administrator, the Secretary, or the State has issued a final order not subject to further judicial review and the violator has paid a penalty assessed ... *shall not be the subject of a civil penalty action*...." 33 U.S.C. § 1319(g)(6)(A) and (g)(6)(A)(iii) (emphasis added). The words "*any violation*," which are contained at § 1319(g)(6)(A), makes evident the Congressional intent that the sole sort of final orders and judgments which would operate to preclude future civil penalty actions brought pursuant to § 1319(g)(6) must concern the same alleged *violation*. Despite their averments, including that this 1982 administrative order and final judgment run with the land now owned by Defendants, Defendants have not provided sufficient evidence for the Court to find that the violation with which this 1982 administrative order and judgment was concerned is the same, or sufficiently so, as those alleged violations with which this lawsuit is now concerned. Accordingly, pursuant to the guidelines under which a Court must evaluate a motion to dismiss brought pursuant to Fed. R. Civ. P. 12(b)(1), the Court declines to dismiss Plaintiff's actions on such grounds.

## V.     **CONCLUSION**

For the reasons discussed above, the Defendants' motion to dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(1) is DENIED.

The foregoing is SO ORDERED.

Dated: New Haven, Connecticut
       May 15, 2014

                                        */s/Charles S. Haight, Jr.*
                                        Charles S. Haight, Jr.
                                        Senior United States District Judge